**Melinda MARTIN, DeAndrea Hill and Winston Kibler**

v.

**FORD MOTOR COMPANY.**

**Civil Action No. G–95–225.**

United States District Court, S.D. Texas, Galveston Division.

Jan. 31, 1996.

Norman Jolly, Houston, TX, Vaughan O. Stewart, Lake Jackson, TX, for Melinda Jo Martin, De Andrea Hill, Winston B. Kibler.

Michael S. Goldberg, Baker & Botts, Houston, TX, for Ford Motor Co.

Steve Waldman, Waldman & Grossman, Houston, TX, for Helfman Ford, Inc.

Edwin Lamm, III, Lamm & Smith, Houston, TX, for McRee Ford, Inc.

Walter R. Grimes, Houston, TX, for Spring Creek Acquisition, Inc.

## ORDER

KENT, District Judge.

Now before the Court are two Motions for Summary Judgment by Defendant Ford Motor Company. The first Motion is for summary judgment on all claims on the grounds that each is preempted by federal law. This Motion is **GRANTED IN PART** and **DENIED IN PART**. The second Motion is for summary judgment on all claims on the grounds that Plaintiffs cannot produce evidence of injury to themselves or causation of injury by Ford. This Motion is **GRANTED.**

### I. Background

Plaintiffs are purchasers of motor vehicles equipped with a passive two-point restraint system (the "safety restraint system"). Three of the original Defendants, Helfman Ford, Inc., Charlie Reaves Auto Sales, and Spring Creek Acquisition, Inc., have been dismissed from this action without prejudice. The sole remaining Defendant is Ford Motor Company ("Ford"), the manufacturer of the vehicles.

The safety restraint system installed in the purchased vehicles consists of a motorized shoulder belt and a manual lap belt. A warning, which states that lap belts should always be worn while the vehicle is in motion, is affixed to the visor. The parties disagree on whether the safety restraint system complies with the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), 49 U.S.C.A. §§ 30101–169 (West Supp.1995),[1] and regulatory standards No. 208 and No.

---

1. The Safety Act was formerly codified at 15 U.S.C.A. §§ 1381–1431 (West 1982 & Supp. 1994).

209 enacted pursuant thereto ("Standards 208 and 209"), 49 C.F.R. §§ 571.208–.209 (1994) (pertaining respectively to occupant crash protection and seat belt assemblies).

Plaintiffs admittedly have not sustained any personal injuries relating to the safety restraint system. They merely contend that the warning advising passengers to fasten the lap belt, which Plaintiffs consider inadequate, renders the vehicles in question unsafe. The Complaint specifically states causes of action for breach of contract, breach of express warranty, breach of implied warranty, fraud,[2] negligent misrepresentation, and violation of the Deceptive Trade Practices—Consumer Protection Act (the "DTPCPA"), Tex.Bus. & Com.Code §§ 17.41–.63 (Vernon 1987). In essence, these claims seek redress for the "inherently dangerous" nature of the vehicles purchased and for the making of affirmative misrepresentations and material omissions by Ford which relate to the safety of the purchased automobiles. No federal claims are asserted. *See* Order entered on August 15, 1995, at 6.

## II. Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)). The nonmovant must produce evidence to supplement the pleadings on the issues for which that party bears the burden of proof at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1355–56.

## III. Preemption of Claims

In its first Motion, Ford argues that each of Plaintiffs' claims is preempted by the Safety Act and its regulations. The doctrine of preemption is founded upon the Supremacy Clause of the United States Constitution, which provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ..., any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2; *California Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). Under the Supremacy Clause, the validity of state law is determined solely by the intent of Congress. *Guerra,* 479 U.S. at 280, 107 S.Ct. at 689. Such intent may be found in federal regulations duly enacted pursuant to delegation of con-

---

**2.** Plaintiffs separately include "deceit" in their list of claims. As alleged, however, the causes of action for fraud and for deceit are one in the same. *See* 37 Am.Jur.2d *Fraud and Deceit* § 1 (1968) (explaining that "[d]eceit is a species of

fraud" involving an injurious misrepresentation); *see also* 41 Tex.Jur.3d *Fraud and Deceit* § 1 (1985) (citing 37 Am.Jur.2d *Fraud and Deceit* § 1).

gressional authority. *Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (citing examples).

■ Federal law can supersede state law in three distinct ways. *Perry v. Mercedes Benz of North America, Inc.*, 957 F.2d 1257, 1261 (5th Cir.1992); *see also Guerra*, 479 U.S. at 280–81, 107 S.Ct. at 689 (identifying three types of preemption); *Hillsborough County*, 471 U.S. at 712, 105 S.Ct. at 2375 (same). First, Congress may, within constitutional constraints, expressly preempt state law. *Guerra*, 479 U.S. at 280, 107 S.Ct. at 689; *Hillsborough County*, 471 U.S. at 713, 105 S.Ct. at 2375. Second, an entire field of state regulation may be impliedly preempted by its distinctly federal nature or by the presence of sufficiently comprehensive congressional regulation. *Guerra*, 479 at 280–81, 107 S.Ct. at 689; *Hillsborough County*, 471 U.S. at 713, 105 S.Ct. at 2375. Third, state law is preempted to the extent it actually conflicts with federal law, which occurs if compliance with both laws is not possible or if compliance with state law impedes attainment of the objectives underlying federal law. *Guerra*, 479 at 281, 107 S.Ct. at 689; *Hillsborough County*, 471 U.S. at 713, 105 S.Ct. at 2375. The United States Court of Appeals for the Fifth Circuit has respectively termed the three categories of preemption, "express, implied (or inferred), [and] conflict preemption." *Perry*, 957 F.2d at 1261.

In the case at bar, Ford seeks only to invoke conflict preemption.[3] *See, e.g.*, Brief at 8 & n. 8 (explicitly declining to invoke express preemption); Brief at 3–4, 12 (implicitly, yet unambiguously, declining to invoke implied preemption). Ford argues that Standard 208, which provides automobile manufacturers with a choice of options for meeting federal safety restraint requirements, *see* 49 C.F.R. § 571.208, precludes Plaintiffs from recovering pursuant to their state-law claims. Although Ford does not contend that simultaneous compliance with federal and state law is not possible, *cf. Perry*, 957 F.2d at 1264 (noting that Standard 208 requires *"minimum* performance standards), Ford maintains that permitting Plaintiffs to assert their state causes of action would impede the congressional goal of affording automobile manufacturers a variety of options for meeting federal safety standards.

■ An important purpose underlying Standard 208 is to provide automobile manufacturers considerable flexibility in meeting safety restraint requirements. *E.g., Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1123 (3d Cir.) ("Standard 208 was specifically designed to give automobile manufacturers a choice among several options when providing restraint systems for passengers."), *cert. denied*, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990); *see also* 49 C.F.R. § 571.208 (providing automobile manufacturers with an array of choices for meeting safety standards). The Supremacy Clause accordingly prohibits state law from imposing higher safety standards on automobile manufacturers which effectively eliminate a

---

**3.** The United States Court of Appeals for the Fifth Circuit has indicated its disapproval of finding express or implied preemption under the Safety Act. *Perry v. Mercedes Benz of North America*, 957 F.2d 1257 (5th Cir.1995) (addressing state claims for defective design of an air bag safety restraint system,). In *Perry*, the Court rejected express preemption by concluding that § 1397(k) (recently reworded without substantive alteration and recodified at 49 U.S.C.A. § 30103(e)), which provided that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law," undermines the implication of preemption found in § 1392(d) (recently reworded without substantive alteration and recodified at 49 U.S.C.A. § 30103(b)), which provided that "[w]henever a Federal motor vehicles safety

standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard." *Perry*, 957 F.2d at 1261, 1264. The Court also rejected implied preemption, finding that "[n]othing in the Safety Act or its regulations reveals 'the clear and manifest purpose of Congress' to take from the States the power to allow tort liability for unreasonably dangerous air bag systems." *Id.* at 1264 (noting that § 1397(k), recently reworded without substantive alteration and recodified at 49 U.S.C.A. § 30103(e), "reveals that Congress had the opposite intent").

choice provided to automobile manufacturers under federal regulations. *E.g., Taylor v. General Motors Corp.*, 875 F.2d 816, 827 (11th Cir.1989) ("[A] state common law rule that would, in effect, remove the element of choice authorized in Safety Standard 208 would frustrate the federal regulatory scheme."),[4] *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *see also Wood v. General Motors Corp.*, 865 F.2d 395, 412 (1st Cir.1988) (noting "Congress's determination that safety is best served by having uniform national standards"), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990). State law is therefore preempted to the extent it recognizes liability for the manufacture of "unsafe" vehicles that comply with federal standards. *See, e.g., San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 246–47, 79 S.Ct. 773, 780–81, 3 L.Ed.2d 775 (1959) (stating that imposing damages is a method of regulation). Nonetheless, state causes of action not falling afoul of this prohibition may be brought against automobile manufacturers despite the enactment of the Safety Act and federal safety regulations. *See* 49 U.S.C.A. § 30103(b) (expressly permitting enforcement of state standards which are identical to applicable federal standards); *id.* § 30103(e) (expressly preserving common-law causes of action); *Perry,* 957 F.2d at 1265–66 (allowing tort liability that "would not remove or require any particular choice [of safety system in motor vehicles], or otherwise frustrate 'flexibility' that the federal scheme provides").

 The Court need not determine whether state safety standards exceed their respective federal counterparts to define the limits of Plaintiffs' causes of action. The breach of implied warranty claim is viable

under the Supremacy Clause only to the extent that the implied warranty, which arises strictly by operation of law, *Melody Home Mfr. Co. v. Barnes,* 741 S.W.2d 349, 352 (Tex.1987), does not require manufacturers to exceed applicable federal regulations to avoid liability. The breach of express warranty claim, in contrast, is fully viable under the Supremacy Clause, because the safety standard is created by the manufacturer's promise alone. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 525, 112 S.Ct. 2608, 2622, 120 L.Ed.2d 407 (1992) (plurality opinion) ("[T]he 'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor.*").

 The remaining claims, all of which depend alternatively on Ford's making affirmative misrepresentations or material omissions,[5] are partially preempted. Tort liability based on material omissions depends upon recognition of a manufacturer's duty to represent its vehicles as being unsafe, which clearly undermines the congressional purpose of flexibility in situations involving vehicles which comply with federal standards. In contrast, tort liability based on false representations of safety by Ford, like contract liability based on the same, arises under standards established by the manufacturer's representations alone. *Cf. id.* at 527–29, 112 S.Ct. at 2623–24 (explaining that fraud liability is based on the duty not to deceive). Consequently, Plaintiffs can maintain actions for fraud, negligent misrepresentation, and violation of the DTPCPA consistently with the Supremacy Clause, but only to the extent that these claims are founded upon affirmative misrepresentations, and not material omissions.

4. The United States Court of Appeals for the Eleventh Circuit departed from the implied preemption analysis of *Taylor in Myrick v. Freuhauf Corp.*, 13 F.3d 1516 (11th Cir.1994), *aff'd,* 115 S.Ct. 1483, 1487–88, 131 L.Ed.2d 385 (1995). After recognizing that all circuit panels are bound by decisions of prior panels except to the extent a decision of the United States Supreme Court alters the prior panel's decision, the Court concluded in *Myrick* that *Taylor's* reasoning is undermined by *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). *Myrick,* 13 F.3d at 1521–22 (finding that

*Cipollone* contravenes the choice made in *Myrick* to engage in an implied preemption analysis). On appeal, however, the United States Supreme Court stated unambiguously that *Myrick's* view of *Cipollone* is without merit. *Freightliner Corp. v. Myrick,* 115 S.Ct. 1483, 1487–88, 131 L.Ed.2d 385 (1995) (affirming on other grounds). *Taylor,* therefore, remains good law.

5. Plaintiffs' claim for negligent misrepresentation is arguably not based on material omissions. Even if this were true, the ensuing analysis would not be affected.

In sum, Ford's Motion for Summary Judgment on preemption grounds in **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' breach of implied warranty action is preempted to the extent it relies upon the recognition of a state standard of safety that exceeds the applicable federal standard. The breach of express warranty claim is not preempted. Plaintiffs' claims of fraud, negligent misrepresentation, and violation of the DTPCPA are preempted only to the extent that they seek to impose liability for omitting to inform Plaintiffs, by way of affixing a warning or otherwise, that the purchased vehicles are not safe.[6]

## IV. Existence of Genuine Issues of Injury and Causation

In their second Motion for Summary Judgment, Ford argues that Plaintiffs cannot demonstrate injury to themselves and, in the alternative, that Plaintiffs cannot demonstrate causation of injury by Ford. Finding that summary judgment is appropriate on either of these grounds, Ford's Motion is **GRANTED.**

### A. *Injury to Plaintiffs*

■ Plaintiffs cannot succeed on any of their claims without demonstrating that they have in fact been injured. *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991) (discussing actions for negligent misrepresentation); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990) (discussing actions for fraud), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Hines v. Evergreen Cemetery Ass'n*, 865 S.W.2d 266, 268 (Tex. App.—Texarkana 1993, no writ) (discussing actions under the DTPCPA); *City of Corpus Christi v. Bayfront Assocs., Ltd.*, 814 S.W.2d 98, 103 (Tex.App.—Corpus Christi 1991, no writ) (discussing actions for breach of contract); *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex.App.—Houston 1987, no writ) (discussing actions for breach of warranty). Plaintiffs, in response to Ford's Motion for Summary Judgment, have failed to produce any evidence of injury.[7] They merely advance two arguments as to why summary judgment is, nonetheless, inappropriate.

First, Plaintiffs argue that Ford's Motion is not based on the requested measure of damages, which is a question of law, but instead is based on the determination of damages, which is a question of fact. This argument is without merit. Ford challenges neither the measure nor the determination of damages, but rather challenges the very existence of damages. The existence of injury to Plaintiffs remains an essential element to the prima facie case of each cause of action asserted. *See supra.* Thus, Plaintiffs' failure to submit any evidence of injury precludes the finding of a genuine issue of fact surrounding the existence of damages, regardless of how damages would be calculated by a trier of fact upon proper consideration of admitted evidence.

Second, Plaintiffs argue that their request for injunctive relief requiring Ford to replace the current warnings with more effective ones establishes damages. This argument lacks merit for a multitude of reasons. As a factual matter, Plaintiffs have not requested injunctive relief in their Complaint. As a legal matter, Plaintiffs may not rely solely on the pleadings regarding issues constituting part of their prima facie case to defeat summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Furthermore, the Complaint itself reveals the absence of injury to Plaintiffs insofar as no injury is alleged.

---

**6.** The Court's finding of partial preemption of DTPCPA claims does not divest the Court of subject matter jurisdiction, because the claim remains partially viable under the Supremacy Clause. *See* Order entered on August 15, 1995 (denying Motion to Remand); *see also* DTPCPA, Tex.Bus. & Com.Code § 17.50(d) ("Each consumer who prevails shall be awarded court costs and reasonable attorneys' fees.").

**7.** None of the affidavits submitted in opposition to the instant Motion indicate that any of the Plaintiffs have suffered injury of any sort. In their Brief in opposition to the instant Motion, Plaintiffs speculate as to evidence that could be obtained through additional discovery which, they contend, may prove damages in the form of a diminution of market value of the motor vehicles and in other forms as well. Such speculation is insufficient to meet Plaintiffs' burden of producing evidence of damages in this case. *See* part II (discussing the standards for summary judgment); part V (discussing Plaintiffs' request for additional discovery).

Plaintiffs' second argument, therefore, also fails to undermine the Court's conclusion that no genuine issue exists as to the existence of injury to Plaintiffs. Consequently, Ford's Motion for Summary Judgment on all claims must be GRANTED.

### B. Causation of Injury to Plaintiffs

██ Causation of injury to Plaintiffs is another element which is common to all of the claims asserted. *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1990) (discussing actions for negligent misrepresentation); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990) (discussing actions for fraud), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Hines v. Evergreen Cemetery Ass'n*, 865 S.W.2d 266, 268 (Tex.App.—Texarkana 1993, no writ) (discussing actions under the DTPCPA); *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex.App.—Houston 1987, no writ) (discussing actions for breach of warranty); *Braselton–Watson Builders, Inc. v. C.B. Burgess*, 567 S.W.2d 24, 28 (Tex.Civ. App.—Corpus Christi 1978, no writ) (discussing actions for breach of contract). Plaintiffs contend that their injuries were caused by the making of false or misleading statements by Ford.[8] They have not, however, produced evidence in support of this contention.

The record is completely devoid of evidence that Plaintiffs learned of any false or misleading statements by Ford prior to filing their Complaint. Without indication that Plaintiffs obtained knowledge of the allegedly false or misleading statements, a reasonable finder of fact could not conclude that reliance upon such statements caused Plaintiffs injury. Moreover, Plaintiffs fail to produce evidence that any false or misleading statements were actually made. The Court,

therefore, must conclude that a reasonable finder of fact could not find that false or misleading statements caused injury to Plaintiffs. Even if the Court were to accept Plaintiffs' averments in their Complaint regarding the content of Ford's advertisements, which allege that Ford stated "Have you driven a Ford lately?" and "Quality is job one," the existence of false or misleading statements could not be found because the former completely lacks factual content and the latter cannot be reasonably construed to include a particular representation of safety. Consequently, Ford's Motion for Summary Judgment must be GRANTED.[9]

### V. Plea for Further Discovery

██ Throughout their Brief, Plaintiffs complain that further discovery is needed to formulate an adequate response to the instant Motions. Such a request, however, cannot defeat a motion for summary judgment. *See Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir.1995) ("[A] simple request for additional time to compose additional discovery is not sufficient to meet the burden of articulating specific facts establishing a genuine dispute for trial."). Nor is a continuance appropriate under these circumstances. *See Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 167 n. 25 (5th Cir.1991) ("To obtain a continuance [after the opposing party has moved for summary judgment], a party must specifically explain both *why* it is currently unable to present evidence creating a genuine issue of material fact and *how* a continuance would enable the party to present such evidence." (emphasis added)). As presented to this Court, therefore, Plaintiffs' request for additional discovery does not serve as a bar to granting Ford's Motion for Summary Judgment.

---

8. The other cause of injury identified by Plaintiffs is the making of material omissions by Ford. Claims based on material omissions as alleged by Plaintiffs, however, are preempted by federal law. *See supra* part III. The Court will accordingly confine its analysis to whether Plaintiffs have established a genuine issue of fact regarding false or misleading statements by Ford as the cause of their injuries.

9. The manufacture of an unsafe vehicle itself, if such has indeed occurred, cannot constitute the cause of injury to Plaintiffs in this case, because Plaintiffs specifically aver that they have not suf-

fered personal injuries and decline to assert a products liability claim. For example, proving that Ford provided Plaintiffs with unsafe vehicles may demonstrate breach of a warranty, but such a showing does not by itself prove causation of injury, which is a distinct element of the prima facie case. *See Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex.App.—Houston 1987, no writ) ("To establish a breach of warranty claim, a plaintiff must prove the existence of a warranty and that the breach thereof caused the plaintiff's injuries.").

## VI. Conclusion

The Court, of course, must not lightly grant motions for summary judgment. Yet, equally as certain, the Court cannot neglect its obligation to dispose of meritless litigation upon receipt of an appropriate filing. Especially in light of the enormity of this Court's docket, which at over eight-hundred case filings per year is among the largest of any court in the United States, an overly lax approach, if adopted by the Court, would impede achievement of "the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. In the instant case, the Court refuses to permit a needless drain on the limited resources of the parties and the judiciary by allowing this unmeritorious litigation to proceed any further.

In this vein, and for the reasons stated in Parts I through V above, the Court now rules on the instant Motions as follows:

Ford's Motion for Summary Judgment on preemption grounds is **GRANTED**, with respect to the breach of implied warranty action, to the extent this action depends upon recognition of a state standard of safety which exceeds federal safety standards. The Motion is also **GRANTED,** with respect to all other actions, to the extent these actions base liability upon factual omissions relating to safety contained in Ford's advertising campaign. The Motion is **DENIED** in its remainder. Consequently, Plaintiffs' breach of implied warranty claim is hereby **DISMISSED WITH PREJUDICE.** Plaintiffs' other claims are **DISMISSED** to the extent that they rely upon Ford's failure to inform them of latent defects relating to the safety restraint system of the vehicles in question.

Ford's Motion for Summary Judgment on the grounds that Plaintiffs cannot demonstrate that they have suffered injury or, alternatively, that Ford made false or misleading statements is **GRANTED.** Consequently, each and all of Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE** in their entirety.

Each party is **ORDERED** to bear its own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file nothing further on these issues in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**